FILED
2006 Jul-17  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KATHLEEN COLE, | ] |
| Plaintiff, | ] |
| vs. | ] CV-04-CO-3355-S |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration a motion for summary judgment filed on March 3, 2006, by defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("SSA"). (Doc. 34.) Plaintiff Kathleen Cole sued the SSA for race discrimination with respect to her attempt at promotion under 42 U.S.C. § 1983 ("§ 1983") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, and the Civil Rights Act of 1991 ("Title VII"). (Doc. 1.) The SSA has moved for summary judgment on all of Ms. Cole's claims. The issues raised in the

Commissioner's motion for summary judgment have been briefed by both parties and are now ripe for decision. Upon full consideration of the legal arguments and evidence presented by the parties, the SSA's motion for summary judgment will be granted in all respects.[1]

II.   Facts.[2]

Plaintiff Kathleen Cole, an African-American female, has worked for the SSA in the Birmingham East District Office since 1969 in various positions. During her first three years of employment, she worked as a Control Clerk and a Mail and Supply Clerk; both are GS-3 positions. Ms. Cole

---

[1] Ms. Cole has abandoned her claim for racial discrimination under § 1983. (*See* Doc. 7 at 3; Doc. 12 at 1; Doc. 17.) *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") In addition, as the SSA correctly stated in its answer to Ms. Cole's complaint, the SSA cannot violate § 1983 because § 1983 only applies to state officials acting under color of state law and is inapplicable to federal agencies. *See* 42 U.S.C. § 1983. Therefore, Ms. Cole's § 1983 claim is due to be dismissed.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

later received a series of promotions from 1971 to 1979, which eventually placed her in a GS-11 position as a Quality Review Specialist.

In November 1980, Ms. Cole accepted the position of Operations Supervisor, GS-11, at the Birmingham East District Office, which was subsequently upgraded to a GS-12 position in 1993.  Ms. Cole's description of her duties as an Operations Supervisor emphasized her involvement in planning and work flow at the Birmingham East Office.  She noted her involvement in a recent Groudhog Day Shadow Program, her involvement with training a Welfare to Work hire, and other incidences when she provided needed assistance to customers and employees.

Ms. Cole reported that from April 1999 to January 2002 she was detailed to the Alabama Disability Determination Service ("DDS"), where she served as the Field Office Liaison, appointed by the State Director.  In January 2002, Ms. Cole received a temporary promotion to a GS-13 position as a Supervisory Contact Representative at the Birmingham Teleservice Center.  Ms. Cole's Teleservice Center Section provided explanations of beneficiary accounts in response to telephone inquiries about various programs administered by the SSA.

Ms. Cole has received numerous awards during her employment with the SSA. Several of these awards occurred since her promotion to the GS-12 level in 1993, and included a Regional Commissioner's Citation. Ms. Cole's Regional Commissioner's Citation was a group award given for her participation in the Alabama Prototype Training Team.

On or about September 5, 2002, the SSA issued a vacancy announcement for one position of Social Insurance Administrator, Assistant District Manager ("ADM"), GS-13, in the Birmingham East Office. Ms. Cole applied for the position on or about September 18, 2002. In accordance with the provisions of the Management Officials Promotion Plan ("MOPP"), which details the process by which applicants are chosen to fill a vacancy, Ms. Cole was placed on the "Best Qualified List" for the Birmingham East ADM position. This list and its corresponding applications were then referred to the selecting official, Mr. L. Douglas Watley, a Caucasian male. Mr. Watley was the District Manager of the Birmingham East District Office.

According to the MOPP, as selecting official, Mr. Watley was required to base his decision on his own personal judgment as to which of the candidates had the greatest potential for successful performance of the

duties and responsibilities of the position to be filled.  He was to consider the applicants' overall qualifications—including work histories, work experiences, and accomplishments (both paid and unpaid)—as well as training and education.  Furthermore, he was to take into account any awards the applicants received in relation to the knowledge, skills, abilities, and other characteristics required to successfully perform the duties of the position.

     Mr. Watley was Ms. Cole's first line supervisor from 1995 to 2002.  They worked together in the Birmingham East Office from 1995 until 1999, when Ms. Cole moved to the Alabama DDS.  It is undisputed that while Ms. Cole was with the DDS from 1999 to 2002, Mr. Watley had little contact with her and did not observe her work performance.  He never contacted anyone during the selection process to determine the level of Ms. Cole's performance during those three years.  Mr. Watley was aware, however, that Ms. Cole had been working in a supervisory capacity.  He also knew that Ms. Cole had been temporarily promoted to another supervisory position during the ten months immediately prior to the selection process.

Using the applications and his personal knowledge of the candidates, to the extent that he had any, Mr. Watley selected Jean Nix, a Caucasian female, for the ADM position in November 2002.  Ms. Nix had worked for the SSA since 1980 in various positions, including Claims Clerk, Claims Technician, and Claims Representative.  In April 1997, Ms. Nix was promoted to the position of Operations Supervisor, GS-12, at the Birmingham East Office.  She worked as a Management Support Specialist ("MSS"), GS-12, from November 1998 to March 2001, before returning to her position as Operations Supervisor.  During her tenure as MSS, she performed the same duties as an Operations Supervisor, except she did not approve advance leave requests or conduct performance appraisals.  Instead, she made recommendations to the District Manager regarding these issues.

Ms. Nix also held positions in other special projects, including Manager for the Special Workloads Office ("SWO"), and coordinator for both the Disability Claims Manager Pilot program and the Special Title II Disability Workload.  The Special Title II Disability Workload involved working with especially old and complicated cases.  The SWO was a unique concept, co-located with the Birmingham East Office, and was established in November

2001 to assist any office in the area or beyond, when appropriate, with any workload.  Ms. Nix was dually serving as Operations Supervisor at the Birmingham East Office and as Manager of the SWO.  It is undisputed that Ms. Nix was instrumental in negotiations with the Union over the Memorandum of Understanding for the SWO and developed training specifically tailored to the SWO.  It is also undisputed that, as Manager of the SWO, Ms. Nix led and motivated the SWO employees to make a major contribution to the area's goals.  In addition, Ms. Nix served as the "alter ego" to the District Manager at the Birmingham East Office, who was routinely away conducting Regional Labor Relations activities.  She performed the full range of supervisory duties for the SWO and the Birmingham East Office.

Ms. Nix also received several awards since her promotion to the GS-12 level in 1997, including the Regional Commissioner's Citation.  Ms. Nix's Regional Commissioner's Citation was an individual award that recognized her "outstanding service and leadership provided to the staff and people served by the Birmingham East Field Office." (Doc. 15 at Def. Ex. 17, p. 34.)

Mr. Watley explained that he selected Ms. Nix based on her abilities to fulfill the duties of the ADM position.  Mr. Watley felt that the ability to lead others was critical in performing the duties of the Birmingham East ADM job in order to meet Agency objectives.  He explained that Ms. Cole was very good at getting work done by directing her staff, but he felt that she needed to do more to garner the support of her staff.  He believed that Ms. Nix was more successful in getting her staff behind the projects that needed to be done.  Mr. Watley also stated that he felt like Ms. Nix had more leadership ability to help employees understand end goals and get the staff to work as a common unit.  Furthermore, Mr. Charles Wofford, the Alabama Area Director who acted as the concurring official in the selection process, concurred in Mr. Watley's selection of Ms. Nix.  He affirmed Mr. Watley's reasoning and reported that Ms. Nix had demonstrated excellent people skills, was tactful and diplomatic, and had been an outstanding employee.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

    Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV. Analysis.

Ms. Cole maintains that she was denied the promotion to ADM because of her race, in violation of Title VII. Because Ms. Cole has not asserted that she had direct evidence of discrimination with regard to her attempt at promotion, we analyze her Title VII claim using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also, Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). First, the plaintiff must establish a prima facie case of discrimination. "To establish [her] prima facie case of discriminatory failure to promote, [Ms. Cole] must show that (1) [s]he was in a protected group; (2) [s]he was not given the promotion; (3) [s]he was qualified for the position and (4) someone outside of the protected group was given the position." *Id.* (citing *Coutu v. Martin County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)). The prima facie case, once established,

creates a presumption of discrimination, which the employer must rebut with legitimate nondiscriminatory reasons for the employment action(s) at issue. "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Standard*, 161 F.3d at 1331.

The SSA contends that Ms. Cole cannot rebut the SSA's legitimate, nondiscriminatory reasons for selecting another individual. (Doc. 14 at 15-16.) In response, Ms. Cole argues that she has presented a material issue of genuine fact as to pretext. (Doc. 17 at 4.)

It is undisputed that on or about September 18, 2002, Ms. Cole, an African-American female, bid on an ADM position, GS-13, in the Birmingham East Office, and the SSA subsequently selected Jean Nix, a Caucasian female, to fill the position. The SSA does not dispute that Ms. Cole has established a prima facie case of race discrimination with regard to her bid for the ADM position. (Doc. 14 at 10-11.) However, Mr. Watley, the selecting official, maintains that he selected Ms. Nix because she had demonstrated, in his opinion, greater skills than Ms. Cole in managing people. He opined that the ability to lead others was critical in performing

the duties of the Birmingham East ADM job in order to meet SSA objectives. (Doc. 14 at 11.) Further, Mr. Wofford, the concurring official, affirmed this reasoning and reported that the selectee had demonstrated excellent people skills, was tactful and diplomatic, and had been an outstanding employee. *Id*. "Faced with these legitimate, nondiscriminatory reasons, [Ms. Cole] must now show that they are pretextual." *Standard*, 161 F.3d at 1334.

Ms. Cole, however, has not presented any evidence that discredits these proffered reasons. Since the U.S. Supreme Court's decision in *Ash v. Tyson Foods*, 126 S. Ct. 1195 (2006), the Eleventh Circuit has reiterated its position that when a plaintiff attempts to prove pretext through differences in qualifications, that "plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks v. County Comm'n of Jefferson County*, -- F.3d 1941, 1943 (11th Cir. April 18, 2006) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *cert denied*, -- U.S. --, 126 S. Ct. 478, 163 L. Ed. 2d 363 (2005)). In a non-

selection case, Plaintiff cannot demonstrate pretext simply by showing that she is more qualified for the position.  *See Colfield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001).  Even if Plaintiff has a greater objective degree of qualification, the Commissioner may give greater weight to subjective factors in determining promotion criteria.  *See Denney v. City of Albany*, 247 F.3d 1172, 1185-86 (11th Cir. 2001) (finding that police chief who denied promotion to officer with higher test scores, better evaluations, and more supervisory experience did not engage in prohibited discrimination in making employment decisions on the basis of subjective considerations such as leadership ability and maturity).

Ms. Cole argues that her long career with the SSA in the Birmingham East Office and the supervisory positions she held automatically mean that she was the best qualified candidate.  (Doc. 17 at 5-6.)  However, being a supervisor for a longer period of time does not necessarily translate into being a better supervisor.  The Eleventh Circuit has specifically declined to "second guess" an employer's decision to emphasize qualifications over length of service.  *See Colfield*, 267 F.3d at 1269 ("We will not second guess Goldkist's decision to emphasize qualifications over length of service.").

While Ms. Cole has a greater length of experience in supervisory positions, Mr. Watley observed both Ms. Cole and Ms. Nix during their employment with the SSA and he believed that Ms. Nix demonstrated greater skills in managing people. (Doc. 15 at Def. Ex. 6, p. 3.) There is no suggestion in the record that Mr. Watley did not honestly believe that Ms. Nix had greater skills in managing people. *See Cooper v. Southern Co.*, 390 F.3d 695, 730 (11th Cir. 2004) (declining to "second guess" the employer's honest assessment of an employee's qualifications). Further, Ms. Cole concedes that Ms. Nix was qualified for the ADM position. (Doc. 15 at Def. Ex. 6, p. 71.)

Thus, while Ms. Cole has had a longer career with the SSA, and she has more years of supervisory experience, she has not shown that any significant, substantive disparity in qualifications exists in her favor between herself and Ms. Nix. Therefore, Ms. Cole has failed to meet her burden under existing Eleventh Circuit law to show that no reasonable person could have chosen Ms. Nix over her for the ADM position. *See Brooks*, -- F.3d at 1944. The SSA, in the exercise of impartial judgment, selected Ms. Nix based on her demonstrated skills and abilities, and Ms. Cole has not provided

sufficient evidence to convince a reasonable jury that the SSA's reasons for selecting Ms. Nix for the ADM position were pretext for race discrimination; therefore, summary judgment is due to be granted on this claim.

V.   Conclusion.

For the reasons set forth above, the Commissioner's motion for summary judgment is due to be granted in all respects. A separate order in conformity with this opinion will be entered.

Done this <u>17th</u> day of <u>July 2006</u>.

                                                           */s/ L. Scott Coogler*
                                             L. SCOTT COOGLER
                              UNITED STATES DISTRICT JUDGE
                                                  124153